**In re Robert Horace CLEMENTS, Debtor.**

**Carol SERELSON, Trustee, and Robert Horace Clements, Plaintiffs,**

**v.**

**UNITED STATES of America, acting By and Through the INTERNAL REVENUE SERVICE, Defendant.**

**Bankruptcy No. 87–01112–A.**
**Adv. No. 88–0037.**

United States Bankruptcy Court,
D. Wyoming.

Aug. 14, 1989.

Georg Jensen, Cheyenne, Wyo., for plaintiffs.

Philip E. Blondin, Tax Div., U.S. Dept. of Justice, Washington, D.C., for defendant.

---

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

HAROLD L. MAI, Bankruptcy Judge.

THIS MATTER came before the court on May 17, 1989, on the plaintiffs' Complaint to Determine Dischargeability of a Debt and for Turnover: Georg Jensen, Cheyenne, Wyoming, appearing for the debtor/plaintiff and the trustee/plaintiff; Philip E. Blondin, Tax Division, U.S. Department of Justice, Washington, D.C., appearing for the government.

Now, the court having considered the testimony and exhibits adduced at trial, the memoranda, having heard arguments of counsel and being fully advised, and the plaintiffs having withdrawn their Complaint for Turnover during the trial, the court does hereby find and conclude as follows:

## FINDINGS OF FACT

1. Robert Clements is a business man. In 1978, he and one Harold E. Roeder began a business known as Midwest Door located in Scottsbluff, Nebraska. They incorporated the business as Midwest Door Distributors, Inc. (Midwest Door). Each was a 50% shareholder. Under a franchise, Midwest Door distributed and installed garage doors for residential and commercial use.

2. Mr. Clements was President and Treasurer of the new corporation and Mr. Roeder was Vice President and Secretary. Mr. Clements remained Treasurer of the corporation from the time of its incorporation through the end of September of 1981. Mr. Clements and Mr. Roeder were the only Directors of Midwest Door from its incorporation through the time it ceased business.

3. The business of Midwest Door operated from 1978 through the end of September of 1981.

4. Prior to being involved with Midwest Door, Mr. Clements had been involved in business with other corporations. As a businessman generally, and as Treasurer of Midwest Door, specifically, Mr. Clements was aware of the requirement to collect, account for, and pay over to the United States taxes withheld from the wages of employees.

5. From 1978 until Midwest Door ceased business sometime in September of 1981, Mr. Clements was responsible for operating the business. Mr. Roeder, on the other hand, supervised the installation and service of the doors. Mr. Clements and Mr. Roeder were the only two (2) authorized signatories on the corporate banking accounts. However, it was Mr. Clements who made deposits to the corporate accounts. Both he and Mr. Roeder hired people.

6. Pursuant to his responsibility for operating the business, Mr. Clements was generally "the boss" at Midwest Door. He did ordering for the company, he signed the company checks, he made the bank account deposits, he directed which creditors were to be paid, he directed the employees, and he signed the quarterly 941 returns.

7. Sometime in late 1980, Mr. Clements began another business in Cheyenne, Wyoming, known as Wyoming Overhead Door Services. Mr. Clements commuted back and forth between Cheyenne and Scottsbluff, Nebraska, from then on. Although he rented an apartment in Cheyenne together with an employee of his companies, he did not stay there during the workweek.

8. From late 1980 on, Mr. Clements and Mr. Roeder discussed a buy out of Mr. Clements' interest in Midwest Door. Over the next year there were various proposals for a buy out of Mr. Clements' interest in the corporation by Mr. Roeder and various other individuals. At one time an employee of Midwest Door attempted to participate in a buy out. However, adequate financing was never arranged for any of the proposed buy outs.

9. On August 28, 1981, Mr. Roeder and Mr. Clements signed an "Agreement for Sale of Stock," whereby Mr. Roeder was to acquire all of Mr. Clements' stock. Per the Agreement, Mr. Clements did receive a check in September of 1981, but it

"bounced," and the sale was apparently never consummated.

10. Mr. Clements remained in control of Midwest Door and its business operations and financial dealings until it ceased operations. He continued to sign checks until the business ceased. Employees of the company testified that there was never a change in Mr. Clements' direction and control of the company during the entire time it operated, up to and including the time when the business ceased operations.

11. In July, August, and September of 1981, Mr. Clements retained, and exercised, the authority to sign corporate checks and direct which creditors were to be paid. As late as August 31, 1981, Mr. Clements was signing Midwest Door checks.

12. During these months, Mr. Clements was well aware that Midwest Door was in very poor financial condition and was having difficulties paying its creditors. On June 12, 1981, a stockholders meeting was held and it was determined by Mr. Clements and Mr. Roeder that the company would have to be offered for sale due to severe financial problems. Mr. Clements signed the minutes of that meeting as President of the corporation.

13. In July, and again in August of 1981, Mr. Clements lent the corporation funds in the amounts of $9,000 and $5,500. He received Promissory Notes for these amounts.

14. On July 29, 1981, Mr. Clements received notice that Midwest Doors' operating lender had setoff the company account and was calling its note due. Mr. Clements was personally liable as guarantor of that note.

15. Although Mr. Clements now claims to have resigned as President of Midwest Door on or about May 8, 1981, he continued acting in that capacity and exercising authority as President well after the time of the purported resignation. Mr. Clements never did resign as Treasurer and continued to act in that capacity until the business ceased.

16. On July 31, 1981, Mr. Clements signed, as President of Midwest Doors, the Employers Quarterly Federal Tax Return for the second quarter of 1981 (941 form). At that time the return showed the taxes were paid.

17. On September 28, 1981, Mr. Clements, as President of Midwest Door, executed a "Waiver by Debtor of Rights After Default" surrendering all of its collateral to the First State Bank, Scottsbluff, Nebraska. Mr. Roeder also executed this Waiver as Vice President. At the time of execution, Mr. Clements was personally liable to the Bank as guarantor of the corporate debt.

18. Laverne Scoggan was the office employee who was in charge of computing the taxes and filing out the 941 forms. She testified that to the best of her knowledge, the taxes were paid as shown on 941 form for the second quarter of 1981. She testified that it was Mr. Clements who went to the bank and made the deposits.

19. Mr. Clements was the person responsible for accounting for, collecting, and paying over taxes withheld from the wages of Midwest Door employees up through and including the day it ceased its business operations.

20. On October 31, 1981, Mr. Clements was assessed the amount of $11,665.66 as the person responsible for paying the unpaid withholding taxes of Midwest Door for the second and third quarters of 1981.

21. During the period in question, there were sufficient funds in Midwest Door's checking account to have paid the taxes withheld from the wages paid to employees.

22. On the date of trial, the total amount of the debt for the unpaid withholding taxes, including penalty and interest, was $20,903.57.

### CONCLUSIONS OF LAW

This court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 1334 and 157, 11 U.S.C. § 505, and Local Rule 905. This action to Determine the Dischargeability of a Debt is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(I).

■ Any corporate officer or employee with power and authority to avoid default or to direct the payment of taxes is a "responsible person" within the meaning of 26 U.S.C. § 6672. *Feist v. United States,* 607 F.2d 954, 221 Ct.Cl. 531 (1979).

■ A person who is a Director, indirect owner, and Treasurer is presumed to be a "responsible person". *Id.*

"Willfully," as used in Section 6672 means a "voluntary, conscious, and intentional decision to prefer other creditors to the Government." *Burden v. United States,* 486 F.2d 302 (10th Cir.1973). In the *Burden* case, willfulness was found where a corporate officer was fully aware of the corporation's financial difficulties and defaulted tax obligations, and yet chose to pay creditors other than the United States.

■ Similarly, in the present case, Mr. Clements was fully aware of Midwest Door's financial difficulties. He was aware that some creditors were having to be "put off." Mr. Clements was the person in the company who was responsible for the 941 taxes. He was the person who signed the returns. He was the person who made the deposits. He was the corporate Treasurer throughout the relevant times. He testified that he assumes he reviewed the records to determine whether or not the 1981 second quarter 941 return was correct when he signed it. He was in control of the company's finances during the time in question.

Mr. Clements was in a unique position to know that the taxes were due and to ensure that they were correctly deposited and paid over.

Robert Horace Clements was a responsible person of Midwest Door Distributors, Inc., pursuant to Section 6672 of Title 26 of the United States Code. The claim of the Internal Revenue Service for assessed, but unpaid taxes and statutory additions in the amount of $20,903.57 is lawful. Plaintiffs' Complaint is dismissed with prejudice in its entirety.

The court will enter an appropriate order.